UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA ROACH,

          Plaintiff,

                                         CASE NO. 04-70971

v.                                  HONORABLE PAUL D. BORMAN

SUR-FLO PLASTICS AND
ENGINEERING, INC.,

          Defendant.

_____/

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND:**

      Sur-Flo Plastics and Engineering, Inc. ("Defendant") manufactures plastic injection

molding products. Defendant maintains plants in Warren, Michigan and Fraser, Michigan.

Sandra Roach ("Plaintiff") was hired as a machine operator in November 1998. There are three

machine operator positions - - first, second and third shift. Plaintiff worked the first shift at Plant

2 in Warren, Michigan.

      Around November 28, 2000, Plaintiff provided Defendant with a doctor's note stating

she was unable to work from November 29, 2000 until after the expected birth of her child on

January 15, 2001. (Defendant's Motion, Ex. 1). On January 9, 2001, Plaintiff gave birth to a

baby boy. (Plaintiff's Response, Ex. 1, Roach's Dep. pg. 8). On March 5, 2001, Plaintiff

provided Defendant a doctor's note indicating that she could return to work on March 12, 2001.

      Shortly after, Defendant's Director of Human Resources, Maria Wolfbauer, notified

Plaintiff that her position was no longer available.  Plaintiff testified that Wolfbauer told her that if she wanted to keep her job she "should have thought about having a baby, if [her] job meant that much to [her]."  (*Id.* pgs. 58-59).   Plaintiff further testified that when she asked what she was supposed to do to take of herself and her family, Wolfbauer again responded by stating that she "should have thought about that before [she] had gotten pregnant."  (*Id.* at 59).  Wolfbauer denied making these comments.

Wolfbauer's notes regarding this conversation provided that on March 8, 2001 she notified Plaintiff she no longer had a position available and that she had exhausted her 12 weeks of Family Medical Leave Act ("FMLA") leave.  (*Id.* Ex. 5).  Plaintiff's 12 weeks of FMLA leave expired on February 11, 2001.  Defendant contends that it offered Plaintiff a third shift position, which Plaintiff denies.  (Defendant's Reply, Ex. 1, Keirpaul Dep. at 20).

Plaintiff testified that after she submitted her medical release to return to work following the exhaustion of her 12 week FMLA leave, she was told that Defendant was "cutting back" and no longer had an available positions for her to return to, and that she could reapply at a later time.  (*Id.* Ex. 2, Roach Dep. at 52-53).

Plaintiff filed her complaint in Macomb County Circuit Court on February 24, 2004. Defendant removed this action to this Court on March 16, 2004.  Plaintiff brings forth claims for violation of the Elliott-Larsen Civil Rights Act ("ELCRA") and the FMLA based upon her position being terminated and Defendant's refusal to rehire her.  Plaintiff also asserts a Bullard-Plawecki Employee-Right-To-Know Act ("ERKA") claim.   Plaintiff claims that in response to a Michigan Employment Security Commission ("MESC") questionnaire regarding Plaintiff's eligibility for unemployment benefits, Defendant sent the MESC correspondence containing

falsehoods which was later placed in her personnel file.  Plaintiff alleges that the correspondence

falsely stated that she was offered a position on the third shift.  Plaintiff further alleges that

Defendant provided the wrong birth date for her child (January 2 rather than January 9).  Lastly,

Plaintiff claims Defendant violated the Consolidated Omnibus Budget Reconciliation Act

("COBRA") by failing to send her the statutorily required notice.

Defendant filed for summary judgment on November 16, 2004.  Plaintiff responded on

December 17, 2004.  Defendant filed its reply on January 4, 2005.  Oral argument was held on

April 27, 2005.

**ARGUMENTS:**

**1.    Defendant's Argument**

Defendant argues that Plaintiff has failed to state a claim of retaliation under FMLA and

Pregnancy discrimination under ELCRA because she did not apply for a second or third shift

position.  (Defendant's Reply, pg. 2).  Defendant further argues that Plaintiff's ERKA claim fails

because the information provided to the MESC was privileged.  (*Id.* at 3).  Lastly, Defendant

contends that Plaintiff failed to state a claim under COBRA because it sent her notice via first

class mail.  (*Id.* at 4).

**2.    Plaintiff's Argument**

Plaintiff alleges that Defendant's refusal to rehire was in retaliation for exercising her

rights under the FMLA.  (Plaintiff's Response, pg. 7).  Plaintiff further alleges that she has

established a *prima facie* case of pregnancy discrimination under ELCRA.  (*Id.* at 11).  Plaintiff

claims that in response to a MESC questionnaire regarding Plaintiff's eligibility for

unemployment benefits, Defendant sent the MESC correspondence containing falsehoods which

3

was later placed in her personnel file, therefore Defendant is liable under ERKA.  (*Id.* at 14).

Lastly, Plaintiff argues that Defendant violated COBRA because it failed to provide her the

statutorily required COBRA notice.  (*Id.* at 16).

## ANALYSIS

### A.    Standard for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R.

Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the nonmoving

party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

4

Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.**     **Discussion**

**1.**     **FMLA Retaliation Claim**

It is unlawful under the FMLA "for 'any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under this subchapter." *Saroli, et al. v. Automation & Modular Components, et al.*, __ F.3d ___ 2005 WL 946782 (6th Cir. April 26, 2005) (quoting 29 U.S.C. §2615(a)(1). To state a claim under the FMLA, a plaintiff must demonstrate "(1) that she engaged in conduct protected by the Act, (2) that the defendant was

aware of this exercise of protected rights, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Id.* (quoting *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001).

Defendant first argues that Plaintiff's FMLA claim must be dismissed because she was not entitled to reinstatement because she did not return from FMLA leave within 12 weeks. Defendant submits that Plaintiff's FMLA leave had expired by February, 2001, and she attempted to return to work in March, 2001. (Defendant's Motion, Ex. K). Plaintiff does not dispute this calculation; she testified that she could not recall. (Defendant's Motion, Ex. A, Roach's Dep. pgs. 90-91). The Sixth Circuit has held that an employer does not violate the FMLA when it terminates an employee who does not return from FMLA leave within 12 weeks. *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 784-85 (6th Cir. 1998). Plaintiff does not appear to dispute this, but rather contends that she is not alleging an FMLA "entitlement" case, rather a FMLA retaliation case. Plaintiff argues that Defendant's refusal to rehire her was in retaliation for exercising her rights under the FMLA. The Plaintiff cites *Smith v. Bellsouth, Inc.,* 273 F.3d 1303 (11th Cir. 2001) which provides:

> [t]he FMLA prohibits employers from discriminating against employees who exercise their leave rights. Bellsouth's argument that its refusal to re-hire is not a prohibited act is predicated on its assertion that Smith is not an 'employee' under the FMLA. We have decided that Smith, a former employee who has applied for reemployment, is an 'employee' under the FMLA. If Smith proves that his past use of FMLA leave was a motivating factor of Bellsouth's refusal to re-hire him, this is precisely the type of discrimination that the FMLA seeks to prohibit.

(*Id.* at 1313-14).

Plaintiff further argues that the strong temporal proximity between Plaintiff's FMLA

6

leave and the refusal to rehire her gives rise to an inference of retaliation.  Further, Plaintiff contends that Defendant's reason of lack of available work could be found by a reasonable jury to be a pretext considering that Plaintiff hired other machine operators during the applicable time period.

Defendant argues that Plaintiff's FMLA claim fails because she has not satisfied the threshold requirement that she applied for a second or third shift position with Defendant. Defendant contends that because Plaintiff failed to apply for a second or third shift position with Defendant, she cannot state a *prima facie* case of retaliation under the FMLA.  Defendant provides that it did hire for second and third shift positions, but Plaintiff was not considered because she never submitted an application.  Plaintiff testified to this issue as follows:

Q. Did you ever fill out another employment application for Sur-Flo?

A.  After being terminated?

Q.  Correct.

A.  No.

Q.  Why not?

A.  I didn't feel it was appropriate.  I was terminated. Why would I go back to the same job?

(*Id.* at 73).

Defendant cites *Storch v. Beacon Hotel Corp.,* 788 F. Supp. 960, 965 (E.D. Mich. 1992). In *Storch,* the plaintiff brought an action against his former employer for failure to promote on the basis of sex.  The plaintiff worked as a front office manager for the defendant hotel from 1986 through 1988.  The plaintiff alleged that she was assured that she would be promoted to assistant general manager by June 1988.  In February 1988, the plaintiff informed her supervisor

7

she was pregnant. In June 1988, the plaintiff who was then five months pregnant was told by her

supervisor to be patient and that after she returned from her maternity leave they could then

discuss training her for the position of general manager.

 The plaintiff further alleged that her supervisor told her that if he were to fill the position

she would not be considered because of her expected maternity leave.  Even assuming this

allegation to be true, the Court found that the plaintiff failed to state a prima facie case of sex

discrimination based on the fact that the plaintiff never applied for the position and it was never

offered to anyone else.  The Court specifically held the following:

> in adapting and using the intentional discrimination analysis in a failure to promote case,
> this court believes that in order to prove a *prima facie* case, plaintiff must first show that
> he or she applied for a vacant position.  Such a requirement in a failure to promote case is
> the equivalent of the first element in the discharge cases - - that the employee was, in
> fact, discharged.  An employment discrimination claim for failure to promote simply
> cannot stand absent proof that a position was available and that the employee applied for
> it.

(*Id.* at 965).

 Similarly, the Sixth Circuit held *Nyugen v. City of Cleveland,* 229 F.3d 559 (6th Cir.

2000), that summary judgment was proper for the employer defendant on the plaintiff's Title VII

failure to promote claim because the plaintiff "failed to satisfy the requirement that he had

applied for the position."  (*Id.* at 564).  Further, the Michigan Court of Appeals has held that the

failure to apply for a position is fatal to a discrimination case for failure to hire.  *Scott v. GFS of*

*Michigan, Inc., et al.,* 2000 WL 33418407 (Mich. App. June 16, 2000) (unpublished).

 In *Smith v. J. Smith Lanier & Co.,* 352 F.3d 1342 (11th Cir. 2003) the plaintiff's employer

told plaintiff that her position was being terminated due to a reduction in workforce.  The

plaintiff told her employer that she would take any available position and she would even be

willing to relocate.  Before the plaintiff's last day of work, she learned of several open positions

posted on the defendant's website, but failed to apply for them.  The Eleventh Circuit upheld the

district court's granting of summary judgment on the plaintiff's age discrimination claim on the

basis of her failure to apply for a position.   The Court found that the plaintiff's statement that

she would take any available position was insufficient to create a *prima facie* case.  The Court

provided:

> [w]e agree with the Sixth and Seventh Circuits.  A general interest in being rehired is not
> enough to establish a *prima facie* case of age discrimination when the defendant
> employer has publicized an open position.

(*Id.* at 1345).

While Plaintiff may not have applied for another position after being told her previous

first shift position was extinguished, she did, in essence, apply for her previous machine operator

position when she contacted Defendant.  Therefore, the cases cited above miss their mark.  The

fact remains that Plaintiff attempted to return to her position, and Defendant refused to hire her.

The Court finds that Plaintiff has brought sufficient evidence to survive summary judgment

based on Defendant's refusal to hire her back.

The Court acknowledges that Defendant was not obligated under the FMLA to rehire her

once her leave expired.   The term "employee" as used in the FMLA is at issue here.  In

*Bellsouth, infra,* the Court held that the term "employee" as used in the FMLA is ambiguous and

clearly not limited to current employees.  As the *Bellsouth* Court provided "to define 'employee'

narrowly such that a former employee who alleges discrimination in the decision to rehire him

lacks standing to bring suit under the FMLA would frustrate the purposes of the Act."

*Bellsouth* at 1307 (internal citation omitted). The Court agrees with this interpretation; a contrary

9

interpretation "would permit an employer to evade the Act by blacklisting employees who have used leave in the past or by refusing to hire prospective employees if the employer suspects they might take advantage of the Act." *Id.* (internal citation omitted).  Another important point is that Defendant did not notify Plaintiff as to a specific date for when her FMLA leave expired and she was required to return to work.  The Court finds that Plaintiff does not lack standing under the FMLA and has brought forth evidence demonstrating that she was not rehired in retaliation for her exercising her FMLA rights.

It is undisputed that Defendant during March and April, 2001 hired a total of 31 new machine operators.  Defendant draws a distinction between time shifts (i.e. first, second and third shifts).  The Court, however, finds that a reasonable jury could find that Defendant refused to hire Plaintiff because she exercised her FMLA rights based upon Defendant's hiring of machine operators and Wolfbauer's comments to Plaintiff that if she wanted to keep her job she "should have thought about having a baby, if [her] job meant that much to [her]" and that Plaintiff "should have thought about [not being able to take care of herself and her family] before [she] had gotten pregnant." (Plaintiff's Response, Roach Dep pgs. 58-59).

Further, the short time frame between Plaintiff taking her FMLA leave and the alleged retaliation supports Plaintiff's claim.  The Sixth Circuit has provided that for a retaliation claim "[a]lthough no one factor is dispositive in establishing a causal connection, evidence ... the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant causation."  *Singfield v. Akron Metropolitan Housing,* 389 F.3d 555, 563 (6th Cir. 2004) (quoting *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).  The Court finds that the evidence, viewed in a light most favorable to Plaintiff, establishes a prima facie FMLA

10

retaliation claim and that Defendant's lack of work defense is pretextual.  In making this

determination, the Court is mindful that "Courts have recognized that in discrimination and

retaliation cases, an employer's true motivations are particularly difficult to ascertain....thereby

frequently making such factual determinations unsuitable for disposition at the summary

judgment stage." *Singfield, infra,* at 564.  Accordingly, the Court denies Defendant's motion for

summary judgment on Plaintiff's FMLA claim.[1]

### 2.    ELCRA Discrimination Claim

Plaintiff further argues that she was discriminated against based upon her pregnancy

under ELCRA.  A claim for pregnancy discrimination under the ELCRA can be demonstrated

through either circumstantial or direct evidence.  *Harrison v. Olde Financial Corp.,* 225 Mich.

App. 601 (Mich. App. 1998).  M.C.L.A. §37.2202, provides in pertinent part:

(1) An employer shall not do any of the following:
(A) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an
individual with respect to employment, compensation, or a term, condition, or privilege
of employment, because of religion, race, color, national origin, age, sex, height, weight,

---

[1]Defendant argues that Plaintiff is subject to the two year statute of limitations of the
FMLA.  "Congress created a two-tiered statute of limitations for FMLA claims.  Generally, the
statute of limitations for an FMLA violation is 'not later than 2 years after the date of the last
event constituting the alleged violation for which the action was brought.' 29 U.S.C.
§2617(c)(1).  However, where an employer engages in a 'willful violation' of the FMLA, the
statute of limitations is extended to three years.  29 U.S.C. §2617(c)(2)." *Hanger v. Lake
County,* 390 F.3d 579, 582 (8th Cir. 2004).  The Court finds that the last event constituting the
alleged violation would be March 8, 2001 when Plaintiff was informed her position was no
longer available.  Plaintiff filed suit on February 24, 2004, more than two years (but less than
three years) later.  To establish a wilful violation of the FMLA, the plaintiff must show that the
employer either knew or showed reckless disregard for whether its conduct was prohibited by
statute.  *Ricco v. Potter,* 377 F.3d 599, 602 (6th Cir. 2004).  Based upon the circumstances
surrounding the failure to rehire Plaintiff, particularly Wolfbauer's comments, the Court finds
that Plaintiff has presented adequate evidence that Defendant willfully violated the FMLA and
therefore the Court applies three year statute of limitations provided for in 29 U.S.C.
§2617(c)(2).

11

or marital status.

M.C.L.A. §37.2202(1)(A).  Section 37.2202(d) defines "sex" as used above to include

pregnancy.

In cases alleging direct evidence of discrimination, the plaintiff may prove unlawful

discrimination in the same manner as a plaintiff would prove any other civil case.  *Sniecinski v.*

*Blue Cross and Blue Shield of Michigan,* 469 Mich. 124, 133 (2003).  The Michigan Supreme

Court has cited with approval the Sixth Circuit's definition of "direct evidence" which is defined

as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least

a motivating factor in the employer's action."  (*Id.* quoting *Hazle v. Ford Motor Co.,* 464 Mich.

456 (2001) (quoting *Jacklyn v. Schering Plough Healthcare Products Sales Corp.,* 176 F.3d 921,

926 (6th Cir. 1999)).   The Michigan Supreme Court in *Sniecinski* further provided:

> [i]n a direct evidence case involving mixed motives, i.e. where the adverse employment
> decision could have been based on both legitimate and legally impermissible reasons, a
> plaintiff must prove that the defendant's discriminatory animus was more likely than not
> a 'substantial' or 'motivating' factor in the decision.  In addition, a plaintiff must
> establish her qualifications or other eligibility for the position sought and present direct
> proof that the discriminatory animus was casually related to the adverse decision.  Stated
> another way, a defendant may avoid a finding of liability by proving that it would have
> made the same decision even if the impermissible consideration had not played a role in
> the decision.

(*Id.* at 133).  (Citations omitted).

In cases involving circumstantial evidence, Michigan Courts follow the burden shifting

approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  (*Id.* at 133-34).

Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a

prima facie case of retaliation, the burden then shifts to Defendants to articulate a legitimate,

[*632] nondiscriminatory reason for the adverse action, then Plaintiff must show that

12

Defendant's nondiscriminatory reason is a pretext designed to mask discrimination.  *Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309,316 (6th Cir. 2001).

To establish a rebuttable case prima facie case of discrimination, a plaintiff must present evidence that: (1) she belongs to a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination.  (*Sniecinski, supra* at 134 (quoting *Hazle, supra* at 463)).

The Plaintiff contends that she meets all the *prima facie* elements for a pregnancy discrimination claim, namely that she is a women who was pregnant and gave birth to a child. Plaintiff contends that she was subject to an adverse employment action when she attempted to come back to work after giving birth and was replaced by men and women who were not pregnant or recently gave birth.  As shown by Defendant's Supplemental Answers to Interrogatories, after Plaintiff was denied an opportunity to return to work on March 12, 2001, Defendant hired a series of men and women for the same position Plaintiff worked (machine operator) shortly thereafter.  Defendant hired Mansour Younan on March 14, 2001; Nissad Mujcic on March 22, 2001; Charles Williams, Darryl Stubbs, Tyrone Fuller and James Washington on April 2, 2001.  (Plaintiff's Response, Ex. 6).  As set forth above, Defendant argues that Plaintiff cannot establish an adverse employment action in regards to her ELCRA pregnancy discrimination claim because she did not apply for a second or third shift position. Despite Defendant's distinction between first, second and third shift machine operators and Plaintiff's alleged failure to apply, the evidence viewed in a light most favorable to Plaintiff establishes that Plaintiff attempted to return to work as a machine operator, and suffered an

13

adverse employment action when she was not rehired.  There is no evidence in the record suggesting that Plaintiff was not qualified to work as a machine operator, and the Court finds that Defendant's proffered reason for not rehiring Plaintiff, namely lack of available work, could be found by a reasonable jury to be a pretext considering that Defendant hired other machine operators during the same time period.

The Court finds Plaintiff's claim is further supported by Wolfbauer's remarks that if she wanted to keep her job she "should have thought about having a baby, if [her] job meant that much to [her]."   The Court finds Wolfbauer's comments to be direct evidence of discrimination. The Court finds *Debrow v. Century 21 Great Lakes, Inc.,* 463 Mich. 534 (2001) helpful regarding this issue.  In *Debrow,* the Michigan Supreme Court reversed a finding a summary judgment on the plaintiff's age discrimination claim based on the comment that the plaintiff "was getting too old for this shit."  The Michigan Supreme Court found that the comment precluded summary judgment because it constituted direct evidence of discrimination.  Similarly here, the Court finds Wolfbauer's comments to be direct evidence of discrimination.  Further, Wolfbauer's comments make it more likely than not that the Defendant's discriminatory animus was a "substantial" or "motivating" factor in the decision not to rehire her.  (*Sniecinski*, *infra,* at 133).

Based on the reasons set forth above, the Court finds that Plaintiff has brought forth sufficient evidence to survive summary judgment on her ELCRA discrimination claim.

### 3.   Alleged Violation of the Bullard-Plawecki Employee Right-To-Know Act ("ERKA")

The ERKA provides in pertinent part:

14

> If there is a disagreement with information contained in a personnel record, removal or correction of that information may be mutually agreed upon by the employer and employee.  If an agreement is not reached, the employee may submit a written statement explaining the employee's position . . . If either the employer or the employee knowingly places in the personnel record information which is false, then the employer or employee, whichever is appropriate, shall have remedy through legal action to have that information expunged.

(MCLA §423.505).  The EKRA further provides the following remedies:

> If an employee violates the act, an employee may commence an action in the circuit court to compel compliance with this act . . . Failure to comply with an order of the court may be punished as contempt.  In addition, the court shall award an employee prevailing in an action pursuant to this act the following damages:
>
> (a) For a violation of this act, actual damages plus costs.
>
> (b) For a willful and knowing violation of this act, $200.00 plus costs, reasonable attorney's fees, and actual damages.

(MCLA §423.511).

Defendant argues that in order for this Court to have jurisdiction over a claim brought under the ERKA, the plaintiff must have requested that the court enter an order compelling compliance with the Act.  *McManamon v. Charter Township of Redford,* 256 Mich. App. 603 (Mich. App. 2003) is instructive.  In *McManamon,* the Michigan Court of Appeals reversed the circuit court which dismissed an employee's claim under EKRA on the grounds that he did not first obtain an order compelling compliance with EKRA and suffer a violation of that order before he could recover damages.  The Michigan Court of Appeals reversed this decision and held that ERKA does not condition a recovery of damages for violation of the act on the employer's first violating an order of compliance.  However, the Court did provide that a ERKA plaintiff "is obliged to commence an action to compel compliance and damages for a violation of the act."  (*Id.* at 614).  The Court remanded the proceedings and provided that the plaintiff shall

15

be permitted to file a properly titled complaint.

In the instant case, Plaintiff's complaint does not seek to "compel compliance." Plaintiff requests that the Court allow him to amend his complaint to properly title it. The Court finds Plaintiff's request reasonable, however, the Court dismisses Plaintiff's EKRA claim on the grounds set forth below.

Plaintiff claims that in response to a MESC questionnaire regarding Plaintiff's eligibility for unemployment benefits, Defendant sent the MESC correspondence containing falsehoods which was later placed in her personnel file. Plaintiff alleges that the correspondence falsely stated that she was offered a position on the third shift. Plaintiff further alleges that Defendant provided the wrong birth date for her child (January 2 rather than January 9). Defendant contends that the information provided to the MESC was not false.

The Court finds that information provided by an employer to the MESC is privileged and the employer is immune from suit. As the Court provided in *Summerville v. ESCO Co. Ltd. Partnership,* 52 F.Supp.2d 804 (W.D. Mich. 1999):

> Michigan law prevents a party from using information obtained by the MESC from an employer in a court proceeding 'unless the commission is a party to or a complaintant in the action or proceeding...' MCLA §421.11(b)(1)(iii).... 'Michigan law also clearly provides that 'any statement made to the MESC in the course of its administrative functions is absolutely privileged and the party making it is immune from suit.

(*Id.* at 811-12) (citations omitted).

Plaintiff does not dispute that Defendant is immune from suit to the extent the false statements were made to the MESC, however Plaintiff contends that Defendant is liable because the correspondence was placed in her personnel file. Plaintiff states that correspondence with the MESC is not among the items allowed to be in a personnel file. However, Plaintiff contends

16

that because Defendant improperly placed it into the file, any immunity Defendant would enjoy

has been eliminated.  In essence, Plaintiff claims that Defendant repeated the false statement

outside the zone of immunity by placing it in the personnel file.  ERKA (MCL §423.501(c))

defines a "personnel record" and provides:

> 'Personnel record' means a record kept by the employer that identifies the employee, to
> the extent that the record is used or has been used, or may affect or be used relative to
> that employee's qualifications for employment, promotion, transfer, additional
> compensation, or disciplinary action.  A personnel record shall include a record in the
> possession of a person, corporation, partnership, or other association who has a
> contractual agreement with the employer to keep or supply a personnel record as
> provided in this subdivision.  A personnel record shall not include:
>
> (i) Employee references supplied to an employer if the identity of the person making the
> reference would be disclosed.
>
> (ii) Materials relating to the employer's staff planning with respect to more than 1
> employee, including salary increases, management bonus plans, promotions, and job
> assignments.
>
> (iii) Medical reports and records made or obtained by the employer if the records or
> reports are available to the employee from the doctor or medical facility involved.
>
> (iv) Information of a personal nature about a person other than the employee if disclosure
> of the information would constitute a clearly unwarranted invasion of the other person's
> privacy.
>
> (v) Information that is kept separately from other records and that relates to an
> investigation by the employer pursuant to section 9.
>
> (vi) Records limited to grievance investigations which are kept separately and are not
> used for the purposes provided in this subdivision.
>
> (vii) Records maintained by an educational institution which are directly related to a
> student and are considered to be education records under section 513(a) of title 5 of the
> family educational rights and privacy act of 1974, 20 U.S.C. 1232g.

(MCLA 423.501(c)).

Defendant notes that documents submitted to the MESC are not listed under the

17

documents "not to be included in a personnel file" under §423.501(c).  Further, Defendant

contends that §423.501(c) states that a "personnel record" includes a record "that may affect or

be used relative to that employee's qualifications for ... additional compensation." In this case,

MESC sent a questionnaire to Defendant stating that "there may be a reason to find the claimant

ineligible or disqualified from receiving benefits."  The Court finds that Defendant's response to

the MESC constitutes information that may affect qualification for additional compensation.

The Court finds that this information contained in Plaintiff's personnel file is not a publication

outside the so-called "zone of immunity."  The Court finds that under ERKA, §423.501(c) there

is a strong argument that Defendant was required to put its responses to the MESC in Plaintiff's

personnel file because it may affect Plaintiff's qualifications for additional compensation.  The

Court finds that it is unreasonable to hold that Defendant loses its immunity from suit based

upon compliance with the ERKA.  Under these circumstances, the Court finds that the letters are

privileged.   Accordingly, the Court grants Defendant's Motion for Summary Judgment on

Plaintiff's ERKA claim.

###   4.      Plaintiff's COBRA Claim

COBRA requires that eligible group health plans provide covered employees with the

option of purchasing continuing health coverage for typically 18 months after a "qualifying

event."  (*Burgess v. Adams Tool & Engineering, Inc.,* 908 F.Supp. 473, 475 (W.D. Mich. 1995)).

29 U.S.C. §1163 provides that a "qualifying event" means, with respect to any covered

employee, any of the following events which, but for the continuation coverage required under

this part, would result in the loss of coverage of a qualified beneficiary:

(1) The death of the covered employee;

18

(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3) The divorce or legal separation of the covered employee from the employee's spouse.

(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act.

(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

(6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

(29 U.S.C. §1163).  After a qualifying event, the employer must provide the covered employee notice of the option to purchase continuation coverage.  29 U.S.C. §1166(a) (2) provides that under COBRA, an employer must notify its plan administrator of a "qualifying event" within 30 days of the event.  The administrator then has 14 days to notify the employee of her right to elect continual coverage.  The failure to provide the covered employee with notice of continuation coverage does not extend the continuation period, but may result in the assessment of damages or civil penalties.  (*Id.* at 478).

Plaintiff has testified that she never received a COBRA notice.  (Plaintiff's Response, Ex. 1, Roach Dep. at 67-68, 108).  Plaintiff testified that she did not discover that her insurance was terminated until she was attempting to fill a prescription for her baby and the pharmacy told her that her insurance had been cancelled.  (*Id.* at 59-60).  Defendant contends that it accidently carried Plaintiff's insurance from March 2001 to June 2001.  Defendant submits that Cobra Complaince Systems, Inc., its third party COBRA service sent Plaintiff the COBRA notice on July 10, 2001 at her last known address.  (Defendant's Reply, Ex. 8; Defendant's Motion, Ex. P, Kierpaul Aff. ¶9).  The Court finds Defendant's evidence sufficient to demonstrate that the

19

notice was sent.  The Court finds that "employers have been found in compliance with section 1166(a) when they send COBRA notices via first class mail to the last known address of an employee."  *Holford v. Exhibit Design Consultants,* 218 F.Supp.2d 901, 906 (W.D. Mich. 2002).

On the other hand, 29 U.S.C. §1166(a) (2) provides that under COBRA, an employer must notify its plan administrator of a "qualifying event" within 30 days of the event.  The administrator then has 14 days to notify the employee of her right to elect continual coverage. Plaintiff contends that the "qualifying event" was her termination in March 2001, and that the COBRA notice was sent five months later.  The COBRA notice listed the "qualifying event" as her termination, but listed the date as June 1, 2001, the date her insurance coverage expired.  (*Id.* (COBRA notice)).  The notice further provided that the last day to elect coverage was September 8, 2001.  (*Id.*).  The Court finds that the "qualifying event" as defined by 29 U.S.C. §1163 was March 8, 2001, the date of her termination. The Court notes that courts have found that a qualifying event is the event that triggered the plaintiff's right to elect coverage, regardless of when her health coverage expired.  As the Court in *Burgess v. Adams Tool & Engineering, Inc.,* 908 F. Supp. 473 (W.D. Mich. 1995) quoting the First Circuit provided:

> that Congress intended an employee's eighteen month period of continuation coverage to commence with the *event leading, under the terms of the plan, to loss of coverage,* rather than upon the loss of coverage itself.

(*Id.* 476) (citation omitted) (italics in original).

Therefore, the Court holds that even with the finding that the COBRA notice was mailed on July 10, 2001, Defendant still violated COBRA because the qualifying event was March 8, 2001, the date of Plaintiff's coverage.  The fact that Plaintiff's coverage continued until June

20

2001 does not alter this holding.

Defendant argues that Plaintiff has failed to show bad faith on its part, and because the assessment of statutory damages is discretionary and depends on several factors including bad faith, the Court should dismiss Plaintiff's claim as a matter of law.  The Court will not dismiss Plaintiff's claim on these grounds at this stage of the proceeding.  Defendant cites several cases which did not assess statutory damages under COBRA in the absence of bad faith.  For example, in *Burgess v. Adams Tool & Engineering, Inc.*, *supra,* the Court refused to award damages for a failure to send a notice under §1166(a) in the absence of prejudice to plaintiff and bad faith on the part of the defendant.   The Court, however, finds that Plaintiff's authority is not applicable instantly because Defendant has moved for summary judgment.  The issue of relief is not before this Court, instead Defendant moves for summary judgment under Federal Rule of Civil Procedure 56.  Because all reasonable factual inferences should be made to the non-moving party, the Court will not grant summary judgment based upon the lack of bad faith by Defendant.  Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's COBRA claim.

21

**CONCLUSION:**

The Court GRANTS Defendant's motion for summary judgment on Plaintiff's ERKA claim.  The Court DENIES Defendant's motion for summary judgment on Plaintiff's FMLA, ELCRA and COBRA claims.

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 18, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 18, 2005.

s/Jonie Parker
Case Manager

22